EMR:RAB/KCB
F.# 2022R00013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -                        25-CR-171 (RER)

JOHN MERRONE,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM IN SUPPORT OF THE GOVERNMENT'S
## MOTIONS *IN LIMINE* TO ADMIT CERTAIN UNCHARGED ACTS

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Kayla Bensing
Rachel A. Bennek
Assistant U.S. Attorneys
(Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS .................................................................................................. 1

I.   Factual Background.................................................................................................. 1

   A.   The Charged Conduct – Jane Doe #1 and Jane Doe #2 ...................................... 1

   B.   Uncharged Conduct – Jane Does #3, #4, and #5 ............................................. 4

      1.   Jane Doe #3 .............................................................................................. 4

      2.   Jane Doe #4 .............................................................................................. 5

      3.   Jane Doe #5 .............................................................................................. 7

ARGUMENT ..................................................................................................................... 9

I. Evidence of the Defendant's Sexual Assaults of Jane Does #3, #4, and #5 Are Admissible
Under Rule 413 .............................................................................................................. 9

   A.   Legal Standard ...................................................................................................... 9

   B.   Discussion............................................................................................................. 14

      1.   The Defendant is Charged with Sexual Assault ............................................ 14

      2.   Evidence of the Sexual Assaults of Jane Does #3, #4, and #5 are Admissible Under Rule
      413........................................................................................................... 14

II.   Evidence of the Defendant's Sexual Misconduct with Other Victims is Admissible Under
Rule 404(b) .................................................................................................................. 17

      1.   Legal Standard.......................................................................................... 17

      2.   Discussion................................................................................................. 18

CONCLUSION…………………………………………………..…………..…………23

TABLE OF AUTHORITIES

Page(s)

**Cases**

Carroll v. Trump,
124 F.4th 140 (2d Cir. 2024)................................................................................................... 19, 20

Doe v. Glanzer,
232 F.3d 1258 (9th Cir. 2000)........................................................................................................ 12

Johnson v. Elk Lake Sch. Dist. ("Elk Lake")
283 F.3d 138 (3d Cir. 2002)................................................................................................. *passim*

United States v. Aminy,
15 F.3d 258 (2d Cir. 1994)............................................................................................................ 18

United States v. Amodeo,
71 F.3d 1044 (2d Cir. 1995)............................................................................................................ 9

United States v. Awadallah,
436 F.3d 125 (2d Cir. 2006)......................................................................................................... 12

United States v. Baker,
82 F.3d 273 (8th Cir. 1996).......................................................................................................... 19

United States v. Barnason,
852 F. Supp. 2d 367 (S.D.N.Y. 2012)...................................................................................... 9, 15

United States v. Batton,
602 F.3d 1191 (10th Cir. 2010)............................................................................................... 10, 12

United States v. Davis,
624 F.3d 508 (2d Cir. 2010)............................................................................................. 10, 13, 15

United States v. Enjady,
134 F.3d 1427 (10th Cir. 1998)..................................................................................................... 10

United States v. Everett,
825 F.2d 658 (2d Cir. 1987)......................................................................................................... 18

United States v. Guardia,
135 F.3d 1326 (10th Cir. 1998)................................................................................................ 12, 13

United States v. Larson,
112 F.3d 600 (2d Cir. 1997).......................................................................................................... 15

United States v. Levy,
731 F.2d 997 (2d Cir. 1984).......................................................................................................... 18

United States v. Livoti,
196 F.3d 322 (2d Cir. 1999).......................................................................................................... 21

United States v. Mickens,
 926 F.2d 1323 (2d Cir. 1991) ................................................................... 17, 22

United States v. Ortiz,
 857 F.2d 900 (2d Cir. 1988) ........................................................................... 17

United States v. Paulino,
 445 F.3d 211 (2d Cir. 2006) ........................................................................... 21

United States v. Peterson,
 808 F.2d 969 (2d Cir. 1987) ........................................................................... 18

United States v. Pitre,
 960 F.2d 1112 (2d Cir. 1992) ................................................................... 17, 21

United States v. Prawdzik,
 2008 U.S. Dist. LEXIS 65499 (E.D. Pa. Aug. 25, 2008) ............................... 12

United States v. Rodriguez,
 No. 04-CR-00055, ECF No. 424 (D. N.D.) ................................................... 22

United States v. Roldan-Zapata,
 916 F.2d 795 (2d Cir. 2024) ....................................................................... 16, 21

United States v. Schaffer,
 851 F.3d 166 (2d Cir. 2017) .............................................................. 10, 13, 15

United States v. Seymour,
 468 F.3d 378 (6th Cir. 2006) ........................................................................ 10

United States v. Sioux,
 362 F.3d 1241 (9th Cir. 2004) ...................................................................... 16

United States v. Snype,
 441 F.3d 119 (2d Cir. 2006) ......................................................................... 22

United States v. Vickers,
 708 Fed. Appx. 732 (2d Cir. 2017) ........................................................ 13, 14

**Statutes**

18 U.S.C. § 2241 .................................................................................................. 1
18 U.S.C. § 2242 .................................................................................................. 1
18 U.S.C. §§ 2244 ................................................................................................ 1

**Rules**

Fed. R. Evid. 401 ......................................................................................... 12, 17
Fed. R. Evid. 402 ......................................................................................... 12, 17
Fed. R. Evid. 403 ..................................................................................... *passim*

Fed. R. Evid. 404 ................................................................................... *passim*

Fed. R. Evid. 413 ................................................................................... *passim*

Fed. R. Evid. 414 .................................................................... 9, 10, 14, 15

Fed. R. Evid. 415 .................................................................................. 9, 10

<u>PRELIMINARY STATEMENT</u>

The defendant John Merrone is charged in a five-count indictment with

(i) aggravated sexual abuse, in violation of 18 U.S.C. § 2241(b); (ii) sexual abuse, in violation of

18 U.S.C. § 2242(2); and (iii) three counts of abusive sexual contact, in violation of 18 U.S.C.

§§ 2244(b), 2244(a)(1), and 2244(a)(2) (the "Subject Offenses").  The government respectfully

submits this memorandum of law in support of its motions <u>in</u> <u>limine</u> to admit evidence that the

defendant engaged in similar sexual misconduct with other victims pursuant to Federal Rules of

Evidence 413 and 404(b).[1]

For the reasons set forth below, the government respectfully submits that the

Court should grant the government's motions in their entirety.

<u>STATEMENT OF FACTS</u>

I.      <u>Factual Background</u>

A.      <u>The Charged Conduct – Jane Doe #1 and Jane Doe #2</u>

In September 2019, a female student cadet in her early 20s, identified herein as

Jane Doe #1, was working on a vessel in the middle of the Atlantic Ocean as part of her

participation in the United States Merchant Marine Academy's ("USMMA") Sea Year Program,

where cadets studying to be midshipmen are assigned to an operating U.S.-flagged merchant

vessel to obtain firsthand experience being a merchant mariner.  At the time, the defendant was

---

[1]      This motion concerns only the admission of certain evidence regarding sexual misconduct by the defendant pursuant to Federal Rules of Evidence 413 and 404(b), and does not set forth additional evidence that the government may seek to admit pursuant to Rule 404(b) or other evidentiary rules, which the government will outline in its primary motions <u>in</u> <u>limine</u> due to the Court, pursuant to the Court's individual rules, approximately 30 days before trial.  (<u>See</u> ECF No. 22; Jan. 30, 2026 Order).  In addition, this week the government identified another victim whom the defendant sexually assaulted.  The government is in the process of investigating and will promptly supplement this motion if needed.

the 47-year-old captain—the highest-ranking official—of the vessel.  While aboard the ship, the defendant drugged and sexually assaulted Jane Doe #1.

The defendant began messaging Jane Doe #1 via Facebook in the summer of 2019, shortly before her arrival on the ship.  Jane Doe #1's shipmate and fellow student cadet, identified herein as Jane Doe #2, also received Facebook messages from the defendant prior to boarding the ship.  The defendant continued messaging both Jane Doe #1 and Jane Doe #2 via Facebook's messaging service once they were onboard.  On September 9, 2019, after over a month onboard and with a little more than a week left in the voyage, the defendant messaged Jane Doe #1 and Jane Doe #2 separately requesting that they come to his stateroom for a "soda."  The below exchange took place on Facebook between the defendant and Jane Doe #1:

| | |
|---|---|
| Defendant: | Coke Zero with u am [Jane Doe #2]???? |
| Jane Doe #1: | Captain you know I stay away from soda ! |
| Defendant: | U may like my soda!?!? |
| Defendant: | Or bring your own soda u may need it. |
| Jane Doe #1: | I don't have soda! |
| Defendant: | Your killing me kid.  Lol.  Just get [Jane Doe #2] come up.  U may enjoy it!!!  Read between lines |

Jane Doe #1 and Jane Doe #2 went to the defendant's stateroom together.  He poured each of them an alcoholic drink out of an already open bottle.  The defendant opened a new bottle of liquor and poured himself a drink.  Notably, the company operating the vessel did not permit alcohol onboard the vessel.  After adding soda to their drinks, Jane Doe #1 and Jane Doe #2 began drinking from the mugs the defendant provided.   While all three were sitting in the defendant's room, the defendant began asking Jane Doe #1 and Jane Doe #2 personal

questions, including questions of a sexual nature.  Shortly after this conversation began—and shortly after consuming the drink the defendant had prepared for them—both Jane Doe #1 and Jane Doe #2 lost recollection of the remainder of the evening.  Later that evening, Jane Doe #2 sent her then-boyfriend messages stating that she did not "feel good" and that she "need[ed] help."

Jane Doe #1 awoke the next morning in her bed in her room wearing only a shirt and bra, and no underwear or pants.  She felt nauseous, had a headache, and felt discomfort in her vaginal area indicative of penetration.  Jane Doe #2 also awoke the next morning with stomach cramping and a headache so severe that she felt unable to work.

The next day, the defendant called Jane Doe #1 to his stateroom and stated, in sum and substance and in part, that he had "fun last night" and asked her to do it again.  After Jane Doe #1 advised that she did not recall what had happened, the defendant told her, in sum and substance, "one thing led to another."  Jane Doe #1 advised that the encounter was not consensual, after which the defendant offered her money, which she declined.  After the assault but while still on the trip, the defendant sent Jane Doe #1 a photograph of herself holding money, along with "lol.  That how u make a woman happy!!!!"  Jane Doe #1 does not recall the photograph being taken and believes the photograph was taken the night of the assault based on her clothing.  Later during the trip, the defendant came to Jane Doe #1's room, pulled the underwear she had been wearing the night of the assault from his pocket, and returned it to her.

After arriving back in the United States, Jane Doe #1 reported the sexual assault to her mother and a friend but did not initially make a report to law enforcement.  She also sought medical attention shortly after arriving home.  In 2021, Jane Doe #1 reported the sexual assault to authorities.

B.     Underlined Conduct – Jane Does #3, #4, and #5

In addition to Jane Doe #1, the defendant also sexually assaulted three other individuals: one, a fellow cadet and student at the Merchant Marine Academy, Jane Doe #3; another, Jane Doe #4, in his apartment; and a third, Jane Doe #5, onboard another ship he was captaining.[2] Each assault involved alcohol and/or drugs, and each bear striking similarities to the charged assault.

1.     Jane Doe #3

In the summer of 1999, Jane Doe #3 was a student at the Merchant Marine Academy and a student cadet on board a ship with the defendant, who was Jane Doe #3's classmate and approximatley 27 years old at the time. Prior to that summer, the defendant had asked Jane Doe #3 to date him, but she declined. The two remained friends. While on the ship, the defendant invited Jane Doe #3 and two other friends to watch a movie in his room. While they were in his room for the movie, the defendant began groping Jane Doe #3 and pinned her to the floor with his full body in front of their friends. The defendant acted as though the incident was funny, but Jane Doe #3 was upset and yelling for him to get off of her.

Later during that same voyage, Jane Doe #3, the defendant, and the same two friends went to port in Pompeii, Italy. While in Pompeii they discussed that Jane Doe #3 had never consumed alcohol before. Jane Doe #3's friends, including the defendant, convinced her to try drinking alcohol, which she agreed to do. The defendant selected a location that served drinks and

_____

[2]     In addition, the government is aware of the defendant's sexual harassment of a female cadet—that did not rise to the level of a sexual assault—in 2019 onboard another ship on which the defendant was a second mate. Should the defendant testify, the government intends to cross examine the defendant as to each of the sexual assaults outlined herein, in addition to his sexual harassment of another young female cadet.

4

was the one that "introduced" the drinks to Jane Doe #3. He ordered the drinks and asked Jane Doe #3 to taste them. While at the bar, the other two friends left to do some sightseeing, leaving the defendant and Jane Doe #3 alone. After Jane Doe #3 tasted a few drinks, the defendant asked if she was buzzed. Jane Doe #3 had her head down on the table at some point and heard the defendant tell the waitstaff that Jane Doe #3 needed a bathroom to throw up. He then physically brought Jane Doe #3 to the bathroom and raped her while she was in an incapacitated state and unable to consent. Jane Doe #3 was unsure whether her state of incapacitation was a result of the defendant putting something in her drink or a result of consuming alcohol for the first time.

Sometime following the assault, the defendant apologized to Jane Doe #3 and begged her to forgive him. Jane Doe #3 subsequently entered into a relationship with the defendant that involved other instances of violence and sexual assault.

2.    Jane Doe #4

In April 2011, the defendant was charged with one count of false imprisonment, one count of aggravated battery, and one count of sexual battery in violation of Florida state laws for engaging in sexual intercourse with Jane Doe #4 at the defendant's apartment against her will, resulting in injuries to Jane Doe #4. At the time, Jane Doe #4 was a 38-year-old waitress working at a bar in the Florida Keys. The defendant was a 39-year-old merchant mariner and customer at the bar. In March 2011, both the defendant and the victim had drinks at a bar and spoke to each other at the bar for approximately half an hour. The defendant and Jane Doe #4 do not agree on how much alcohol Jane Doe #4 drank at the bar, with the defendant claiming that Jane Doe #4 had consumed more alcohol than she recalled. Jane Doe #4 was searching for an apartment at the time; the defendant informed her that he had a room available for rent. Jane Doe #4 went to the defendant's apartment, which was next door to the bar, where he showed her

around and they discussed the rental price. After Jane Doe #4 indicated she was no longer interested in renting the apartment, the defendant would not let her leave and forced himself on her sexually. At some point, Jane Doe #4 passed out or lost time, but recalled being on the defendant's bed, with all her clothes off, with the defendant on top of her forcibly having sex with her. At one point, Jane Doe #4 pretended she was going to be sick to attempt to get the defendant off of her; while she forced herself to throw up in the bathroom, the defendant remained near her and would not let her leave. The defendant then forced her to have sex with him again. During this incident, while dragging Jane Doe #4 back to his bed to rape her again, the defendant grabbed Jane Doe #4 by the foot and pulled on her toe, breaking it. The defendant took photographs of Jane Doe #4 in the nude without her consent while she was passed out. Jane Doe #4 was able to fight the defendant such that he got off her and she was able to escape. Jane Doe #4 believes she was drugged prior to the assault.

Shortly thereafter, Jane Doe #4 reported to a friend that the defendant had assaulted and raped her and that she got away by punching and kicking him. Jane Doe #4 initially refused to speak to the police. Approximately two days after the assault, Jane Doe #4 went to the emergency room, where a medical professional observed injuries to her eye and bruising on her neck, arm, and knee. At that time, Jane Doe #4 spoke with police and identified the defendant as the perpetrator.

At the state trial, the defendant maintained that Jane Doe #4 went to his apartment after the bar for sexual purposes, that they had consensual sex there and that he took nude photographs of Jane Doe #4 with her consent. The defendant called an expert witness who testified that Jane Doe #4's broken toe was inconsistent with having been pulled but rather was a stubbed toe. He also called his roommate and coworker, an earwitness who testified that from

6

his own room, he heard two people having sex and had the impression that it was consensual, though he may have slept through some of it. Approximately 10 days to two weeks prior to the former roommate testifying in the state trial, the defendant paid his former roommate $2,100 in money the defendant purportedly owed him for his work for the defendant's charter boat business.

The case proceeded to trial, and the jury convicted the defendant of the charged false imprisonment count; however, on the aggravated and sexual battery charges, the jury found him guilty only of the lesser-included offense of battery. An appellate court set aside the verdict after determining that the trial court erred in not permitting the defense to recall a detective-witness to testify about a prior statement made by the defendant's roommate and coworker, specifically, that he had given a prior statement a few days after the assault occurred that was consistent with his trial testimony (tending to show he may not have been influenced by his eve-of-trial receipt of payment from the defendant). The state did not retry the case.

3.     Jane Doe #5

Between June and September 2021, a female merchant mariner in her late 20s, hereinafter Jane Doe #5, worked on a vessel. At the time, the defendant was the 49-year-old captain of that vessel. Prior to boarding the vessel, the defendant contacted Jane Doe #5 via Facebook and consistently communicated with her during the weeks leading up to her boarding the ship. These initial communications included, among other discussions, the defendant stating that Jane Doe #5's boyfriend was likely not "good enough" for her and stating that he "better see bathing suit pictures" of Jane Doe #5.

Some weeks after boarding, in or about late June 2021, the defendant invited Jane Doe #5 and another male shipman ("Individual-1") to his stateroom to watch a movie and have a

drink with him. Once Jane Doe #5 arrived in his stateroom, the defendant asked Jane Doe #5 if she trusted him and then poured Jane Doe #5 a drink from a bottle of Jameson and added Coca-Cola. As previously noted, alcohol was not permitted on the vessel. After the movie, Individual-1 left, and only the defendant and Jane Doe #5 remained in the defendant's stateroom. During the time she was in his stateroom, Jane Doe #5 nursed approximately two drinks. After Individual-1 left, the defendant began asking Jane Doe #5 questions about her sexual preferences. Jane Doe #5 advised that she had a boyfriend and attempted to get off the couch. However, after attempting to get off the couch, Jane Doe #5 had no further recollection from that evening.

The next morning, Jane Doe #5 awoke in the defendant's bed. She was alone, disoriented, and felt vaginal soreness and liquid between her legs indicative of sexual intercourse. Jane Doe #5 also awoke feeling like she had been "hit by a truck." Jane Doe #5 later discovered that the defendant had taken a photograph of Jane Doe #5 nude in his bed while she was unconscious, just as he had done to Jane Doe #4. In a Facebook message to the defendant following the assault, Jane Doe #5 wrote that she could "barely remember the first night [they] did anything," and, in later messages to third parties, she wrote, "I don't recall the first night anything happened," and, "I don't remember the first time at all." Jane Doe #5 later came to believe the defendant had drugged her.

Following the assault, the defendant began acting as if Jane Doe #5 and he were dating and continued to pressure her to engage in sexual activity with him. Trapped on the ship with him, Jane Doe #5 at times acquiesced to his advances. After her departure from the ship,

8

████████████████████████████,[3] the defendant repeatedly contacted Jane Doe #5 and her family members. This repeated and unwanted contact resulted in Jane Doe #5 reporting the defendant's harassment to local law enforcement.

ARGUMENT

I.  Evidence of the Defendant's Sexual Assaults of Jane Does #3, #4, and #5 Are Admissible Under Rule 413

    A.  Legal Standard

In a sexual assault case, the admissibility of evidence of other sexual assault offenses is governed by Federal Rule of Evidence ("Rule") 413.[4] The rule provides that in "a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). Rule 413(d) defines "sexual assault" as:

> a crime under federal law or under state law (as "state" is defined in 18 U.S.C. § 513) involving: (1) any conduct prohibited by 18 U.S.C. chapter 109A; (2) contact, without consent, between any part of the defendant's body — or an object — and another person's genitals or anus; (3) contact, without consent, between the defendant's

---

[3] ████████████████████████████████████████████ United States v. Amodeo, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (privacy interests of third parties may be compelling reason justifying sealing).

[4] Rule 413's sister-rule, Rule 414, allows evidence of a defendant's commission of other offenses of child molestation in a criminal case where the defendant is accused of child molestation. Rule 415 provides that the evidence covered by Rules 413 and 414 is admissible in civil cases. The principles governing admission of evidence under these rules is the same. See, e.g., United States v. Barnason, 852 F. Supp. 2d 367, 376 (S.D.N.Y. 2012) (noting that "[t]here is a dearth of case law in this Circuit concerning how district courts should apply Fed. R. Evid. 415," and relying on cases interpreting Rule 413 to admit under Rule 415 uncharged acts of sexual assault in a civil case).

genitals or anus and any part of another person's body;
(4) deriving sexual pleasure or gratification from inflicting
death, bodily injury, or physical pain on another person;
(5) an attempt or conspiracy to engage in conduct
described in subparagraphs (1)–(4).

Fed. R. Evid. 413(d).

Rule 413 stands as an exception to the general rule barring the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts. <u>See</u> Fed. R. Evid. 404(a). Put differently, Rule 413 permits other acts evidence precisely for the purpose of showing a defendant's propensity to engage in the kinds of acts with which he is charged. "Congress enacted [Rules 413-415] because these types of cases [referring to sexual assault cases] often raise questions regarding the victim's credibility and a defendant's prior conduct can be especially probative," and the rules are "'based on the premise that evidence of other sexual assaults is highly relevant to <u>prove propensity</u> to commit like crimes.'" <u>United States v. Batton</u>, 602 F.3d 1191, 1196 (10th Cir. 2010) (quoting <u>United States v. Enjady</u>, 134 F.3d 1427, 1431 (10th Cir. 1998) (emphasis added)). The Second Circuit has expressly noted that, "a prosecutor may use evidence of prior sexual assaults precisely to show that a defendant has a pattern or propensity for committing sexual assault. In passing Rule 413, Congress considered knowledge that the defendant has committed rapes on other occasions to be critical in assessing the relative plausibility of sexual assault claims and accurately deciding cases that would otherwise become unresolvable swearing matches." <u>United States v. Schaffer</u>, 851 F.3d 166, 177-78 (2d Cir. 2017) (internal quotation marks and alterations omitted); <u>see also</u> <u>United States v. Davis</u>, 624 F.3d 508, 512 (2d Cir. 2010) (Rule 414 is an express "exception to the usual proscription against admission of prior crimes to prove the character of a person in order to show action in conformity therewith."); <u>United States v. Seymour</u>, 468 F.3d 378, 384-85 (6th Cir. 2006) ("Rules 413 and 414, enacted in 1995,

10

were designed to 'protect the public from crimes of sexual violence' by permitting 'in sexual assault and child molestation cases . . . evidence that the defendant has committed offenses of the same type on other occasions.'" (quoting 140 Cong. Rec. H8968, H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari))). These rules apply not just to prior convictions, but even to evidence of uncharged offenses. See Johnson v. Elk Lake Sch. Dist. ("Elk Lake"), 283 F.3d 138, 151-52 (3d Cir. 2002).

Rule 413 was designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)" and to create a presumption that "evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects." 140 Cong. Rec. H968, H8991-92 (1994) (remarks of principal House sponsor, Rep. Molinari); see also 140 Cong. Rec. S12990; David J. Karp, Evidence of Propensity and Probability in Sex Offense Cases and Other Cases, 70 Chi. Kent. L. Rev. 15, 19 (1994). Furthermore, Congress recognized and intended that this approach would make the admission of similar crimes evidence in federal sex offense cases the norm, and its exclusion the exception, even in instances where there is a substantial lapse in time between the charged conduct and the other acts. The legislative sponsors noted:

> The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule. The presumption is in favor of admission. The underlying legislative judgment is that the evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.
>
> In line with this judgment, the rules do not impose arbitrary or artificial restrictions on the admissibility of evidence. Evidence of offenses for which the defendant has not

> previously been prosecuted or convicted will be admissible,
> as well as evidence of prior convictions. No time limit is
> imposed on the uncharged offenses ... as a practical matter,
> evidence of other sex offenses by the defendant is often
> probative and properly admitted, notwithstanding
> substantial lapses of time in relation to the charged offense
> or offenses.

140 Cong. Rec. H8992 (1994) (Statements of Rep. Molinari and Senator Dole) (emphasis added); see also 137 Cong. Rec. S3212, S338-3242 (1991); Karp, 70 Chi. Kent L. Rev. at 19.

Evidence of a defendant's other sexual assault is admissible under Rule 413 where "(1) the defendant is currently accused of an offense of sexual assault; (2) the proffered prior acts evidence is 'of the defendant's commission of another offense . . . of sexual assault,' Fed. R. Evid. 413(a); and (3) the proffered evidence is relevant." Batton, 602 F.3d at 1196 (citing United States v. Guardia, 135 F.3d 1326, 1328 (10th Cir. 1998)); see also Elk Lake, 283 F.3d at 144-56; United States v. Prawdzik, No. 07-CR-40 (LFS), 2008 U.S. Dist. LEXIS 65499, *3-5 (E.D. Pa. Aug. 25, 2008). With respect to the last prong, it is generally accepted that a defendant with a propensity to commit sexual acts similar to those charged is more likely to have committed the charged act and therefore such evidence is relevant and in conformity with the standards set out in Rules 401 and 402. Doe v. Glanzer, 232 F.3d 1258, 1268 (9th Cir. 2000); see also Fed. R. Evid. 401 (stating that evidence is relevant if it has a tendency to make the existence of any fact "more or less probable than it would be without the evidence"); Fed. R. Evid. 402 (stating that only relevant evidence is admissible at trial).

Even where the evidence is determined to be relevant, however, a Rule 403 balancing is appropriate when deciding whether to admit such evidence. United States v. Awadallah, 436 F.3d 125, 131 (2d Cir. 2006) ("so long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice," a Rule 403

determination "will be disturbed only if it is arbitrary or irrational"); <u>Davis</u>, 624 F.3d at 512;

<u>Schaffer</u>, 851 F.3d at 180; <u>see also</u> <u>United States v. Vickers</u>, 708 Fed. Appx. 732, 736 (2d Cir.

2017). The Third Circuit's decision in <u>Elk Lake</u> is particularly instructive with regard to the Rule

403 analysis that must take place in this context. The court instructed as follows:

> Having concluded that Rule 403 is applicable to Rules 413-15, we now turn to the manner in which the balancing inquiry ought to be performed. . . . In these archetypal cases, where the propensity inference that can be drawn from the past act evidence is greatest, Congress surely intended for the probative value of the evidence to outweigh its prejudicial effect, and, conversely, did not want Rule 403 factors such as undue delay, waste of time, confusion of the issues, etc., to justify exclusion. <u>See</u>, <u>e.g.</u>, 140 C.R. 15,209 (1994) (Statement of Rep. Kyl) (recognizing as the archetypal case one in which "there is a clear pattern of conduct by an accused who has been convicted of similar conduct").

> In other cases, however, where the past act is not substantially similar to the act for which the defendant is being tried, and/or where the past act cannot be demonstrated with sufficient specificity, the propensity inference provided by the past act is weaker, and no presumption in favor of admissibility is warranted. Where a past act cannot be shown with reasonable certainty, its probative value is reduced and it may prejudice the defendant unfairly, confuse the issues, mislead the jury, and result in undue delay and wasted time -- all reasons for excluding evidence under Rule 403. The same can be said of evidence of past acts that are dissimilar to the act for which the defendant is being tried; in particular, the introduction of dissimilar past acts runs the risk of confusing the issues in the trial and wasting valuable time. Also relevant to the Rule 403 balancing analysis are the additional factors recognized by the Tenth Circuit in <u>Guardia</u>: "the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim." 135 F.3d at 1330 (internal citations omitted).

<u>Elk Lake</u>, 283 F.3d at 155-56.

        B.      <u>Discussion</u>

           1.     <u>The Defendant is Charged with Sexual Assault</u>

As an initial matter, the defendant is charged with sexual assault, as required by Rule 413. This includes various charges that involve the defendant touching or penetrating Jane Doe #1's genitals without her consent. (<u>See</u> Indictment). <u>See</u> Fed. R. Evid. 413(d)(2) and (d)(3) (definition of "sexual assault" includes violations of law involving "contact, without consent, between any part of the defendant's body — or an object — and another person's genitals or anus" and "contact, without consent, between the defendant's genitals or anus and any part of another person's body"). For example, the defendant is charged in Count One with intentionally rendering Jane Doe #1 unconscious, and administering to her without her knowledge or permission, a drug, intoxicant, or similar substance, thereby substantially impairing Jane Doe #1's ability to appraise or control conduct and causing Jane Doe #1 to engage in a sexual act, specifically, contact between the defendant's penis and Jane Doe #1's vulva and the penetration of Jane Doe #1's genitals. This conduct falls squarely within the definition of "sexual assault" for purposes of Rule 413.

           2.     <u>Evidence of the Sexual Assaults of Jane Does #3, #4, and #5 are Admissible Under Rule 413</u>

Because the defendant is charged with sexual assault, evidence of other sexual assaults is plainly admissible under Rule 413. Here, the government intends to prove that the defendant engaged in virtually identical conduct with Jane Doe #1 as with the other victims, that is, engaging in sexual intercourse with them without their consent and after rendering them incapacitated. <u>See, e.g.</u>, <u>Vickers</u>, 708 F. App'x at 737 (finding "testimony concerning [the defendant's] sexual abuse of other victims" "plainly admissible under Rules 413 and 414

14

because it was probative of [the defendant's] propensity for sexually abusing adolescent boys who were entrusted to his care").  Evidence of these other sexual assaults is thus admissible pursuant to Rule 413.

It is also admissible pursuant to Rule 403.  Rule 403 excludes relevant evidence only "if its probative value is substantially outweighed by a danger of . . . unfair prejudice. However, the fact that evidence may be highly prejudicial does not necessarily mean that it is unfairly prejudicial."  Schaffer, 851 F.3d at 181-82.  Indeed, as detailed above, the Second Circuit has instructed courts to apply Rule 403 "less stringently" to evidence proffered under Rule 413, Barnason, 852 F. Supp. 2d at 376, and has held that the "presumption is that the evidence admissible pursuant to these rules is typically relevant and probative, and that its probative value is not outweighed by any risk of prejudice," United States v. Larson, 112 F.3d 600, 604 (2d Cir. 1997) (internal quotation marks omitted)).  Consequently, where evidence is offered under Rule 413, courts apply Rule 403 with a "thumb on the scale in favor of admissibility."  Elk Lake, 283 F.3d at 155; see also Davis, 624 F.3d at 512 (noting that sexual propensity evidence may be "highly prejudicial" but not necessarily "unfairly prejudicial" and affirming admission of such evidence under Rule 414).  Where, as here, the evidence of additional sexual assaults are so factually similar to the charged acts, any prejudice from admission of that evidence is far outweighed by its probative value—particularly where, as the government expects here, the defendant may argue that he lacked criminal intent, or that he was simply mistaken in thinking that he had consent, when he sexually assaulted Jane Doe #1.  See, e.g., Schaffer, 851 F.3d at 181 ("The video evidence [showing the defendant sexually assaulting two other minor girls] was certainly prejudicial, but that prejudice did not substantially outweigh the probative value of the evidence given the severity of the crimes charged, the similarity

15

between [the defendant's] acts in the videos and the acts alleged in the indictment, and the fact that [the defendant] argued at trial that the government failed to prove his intent to engage [the victim] in illegal sex."). The defendant's long and unfortunately consistent history in sexually assaulting women is direct evidence of his criminal intent under Rule 413 and is highly probative under Rule 403.

Nor is it unfairly prejudicial. Each of the assaults—drug or alcohol-facilitated sexual assaults—are no more "sensational or disturbing" than the charged conduct. See United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 2024) (risk of unfair prejudice is remote where other acts evidence is not "any more sensational or disturbing" than the charged conduct). Indeed, the assault of Jane Doe #5 is virtually identical to that of the charged assault of Jane Doe #1. It is close in time—within two years—of the charged assault, which also favors admissibility. It is immaterial to the Court's analysis that the assault of Jane Doe #5 occurred after, rather than prior to, the assault of Jane Doe #1. Rule 413 does not distinguish between the two, but rather speaks only to the admission of evidence of the defendant's commission of "any other sexual assault." Fed. R. Evid. 413; see also United States v. Sioux, 362 F.3d 1241 (9th Cir. 2004) (holding that the plain language of Rule 413 "permits admission of subsequent acts evidence to the same extent it permits the introduction of evidence tending to demonstrate prior acts of sexual misconduct").

The assaults on Jane Does #3 and #4 are equally admissible. The assault on Jane Doe #4 occurred within 8 years of the assault on Jane Doe #1; though the assault on Jane Doe #3 occurred prior to that, the similarity between each of them establishes "a clear pattern of conduct by the accused," making this the "archetypal case" in which "Congress surely intended for the probative value of the evidence to outweigh its prejudicial effect." Elk Lake, 283 F.3d at 155-56.

16

Accordingly, evidence of the defendant's sexual assaults of Jane Does #3, #4, and #5 are admissible pursuant to Rule 413.

II.     Evidence of the Defendant's Sexual Misconduct with Other Victims is Admissible Under Rule 404(b)

In the alternative, the above-outlined evidence regarding certain sexual misconduct by the defendant is admissible pursuant to Rule 404(b).

1.     Legal Standard

Evidence of uncharged crimes or other acts may be admitted pursuant to Rule 404(b) for permissible purposes, including to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Fed. R. Evid. 404(b)(2); see United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988).  Rule 404(b) evidence is only admissible if, under Rule 403, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or by considerations of judicial economy such as the needless presentation of cumulative evidence.  Id.

The Second Circuit has established a three-prong test for the admission of "other crimes" evidence under Rule 404(b).  First, a trial court must determine that the evidence is offered for a purpose other than to prove the defendant's bad character or criminal propensity. See United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992); United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991).  Second, the trial court must determine that the evidence is relevant under Rules 401 and 402 of the Federal Rules of Evidence and whether its probative value is substantially outweighed by the danger of unfair prejudice.  See Pitre, 960 F.2d at 1119; Mickens, 926 F.2d at 1328.  Third, the court must provide an appropriate limiting instruction to the jury, if one is requested. See Pitre, 960 F.2d at 1119; Mickens, 926 F.2d at 1328-29.

17

While the government "must explain in detail the purposes for which the evidence is sought to be admitted," United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) (internal citation omitted), the Second Circuit has emphasized that Federal Rule of Evidence 404(b) is a rule of broad reach and liberal application. Id. ("We have adopted the inclusionary or positive approach to [404(b)]; as long as the evidence is not offered to prove propensity, it is admissible."). To the extent that evidence of an uncharged crime is offered to prove knowledge or intent (i.e., state of mind), the law requires that the other act and the charged conduct be "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge [or intent] inference advocated by the proponent of the evidence." United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994) (quoting United States v. Peterson, 808 F.2d 969, 974 (2d Cir. 1987) (internal quotation marks omitted)).

Finally, additional bases for admitting other acts evidence under Rule 404(b) include "corroborat[ing] crucial prosecution testimony" if the corroboration is "direct and the matter corroborated is significant." United States v. Everett, 825 F.2d 658, 660 (2d Cir. 1987) (internal quotation marks omitted).

Here, evidence of the defendant's participation in other sexual assaults is evidence of the defendant's motive, knowledge, opportunity, intent, plan, and absence of mistake and lack of accident.

2.    Discussion

Evidence of the defendant's sexual assaults of Jane Does #3, #4, and #5 should, if not admitted under Rule 413, be admitted, in the alternative, for the purpose of establishing the defendant's motive, knowledge, opportunity, intent, plan, and absence of mistake and lack of accident. The defendant's rape of each of these women are yet additional instances in which the

18

defendant engaged in an alcohol or drug facilitated sexual assault—a common theme across all of his rapes—and one that directly establishes his intent and plan in providing his victims with inhibition-removing substances.

For example, with respect to Jane Doe #3, he invited her to his stateroom on a ship at sea to watch a movie, just as he did with Jane Does #1, #2, and #5. While watching the movie, he engaged in inappropriate and unwanted physical contact with Jane Doe #3. Later, while in Pompeii, the defendant used alcohol, and possibly other substances, to place Jane Doe #3 into an incapacitated state, just as he did with Jane Does #1, #2, #4, and #5, and then took advantage of that incapacitated state to rape Jane Doe #3, just as he did with Jane Does #1, #4, and #5. Indeed, the same is true of the assault on Jane Doe #4; the defendant took advantage of her in an incapacitated state once he had brought her back to his room—just as he did with Jane Does #1 and #5. The defendant's use of substances to incapacitate his victims is a common scheme or plan seen across all of his assaults. See Carroll v. Trump, 124 F.4th 140, 168 (2d Cir. 2024) ("Courts have routinely admitted evidence of a pattern or modus operandi in sexual assault cases where, as here, the defendant is alleged to have engaged in a distinctive pattern of conduct related to non-consensual sexual contact." (collecting cases)); see also United States v. Baker, 82 F.3d 273, 276 (8th Cir. 1996) (finding district court properly admitted 404(b) evidence of a "remarkably similar series of prior actions" showing the defendant's common plan or scheme).

Indeed, the defendant's assaults on each of Jane Does #1, #3, #4, and #5 are extraordinarily similar, but the assaults on Jane Doe #1 and Jane Doe #5 are virtually identical. Both assaults involved the defendant inviting young women (Jane Does #1, #2, and #5), each of whom he was a superior to on a vessel that was at sea, to his stateroom; offering the young women a drink that he poured himself from an open bottle; and each woman quickly losing

recollection of the evening following consuming the drink the defendant provided. The government anticipates that all three Jane Does will describe the loss of recollection after consuming the drinks in a similar manner and a similar physical experience the following morning of being sick beyond anything they had experienced from alcohol. The evidence presented regarding Jane Doe #5 will show a pattern of the defendant engaging in inappropriate conduct with much younger female subordinates while they are trapped with him on a vessel at sea; a pattern of providing alcohol to female subordinates on dry vessels where alcohol is not permitted; and a modus operandi or common scheme or plan of inviting female subordinates to his stateroom, providing an alcoholic drink with which he drugged them, and sexually assaulting his victims while they are under the influence of the drugs and unable to consent. See Carroll, 124 F.4th at 168. The evidence regarding Jane Does #3 and #4 follow a similar pattern. Additionally, with respect to Jane Does #1, #4, and #5, the defendant took photographs of each woman he assaulted while they were in an incapacitated state.

The repeat nature of the defendant's use of substances to facilitate his sexual assaults also demonstrates his knowledge that his victims are unable to consent and his intent to put his victims in an incapacitated state. Such evidence in this case is highly probative, where the government anticipates that the defendant will argue at trial that he did not incapacitate Jane Doe #1 (or Jane Doe #2), and that he did not know Jane Doe #1 was not consenting and did not realize that she was blacked out and/or seriously incapacitated. That the defendant has raped three other women, has done so after providing them with alcohol and/or other substances, and had been put on notice that the prior encounters were non-consensual—in the case of Jane Doe #4, even been tried and convicted for such conduct—demonstrates an absence of mistake, lack of accident or, put more simply, his criminal intent in incapacitating and raping Jane Doe #1.

20

Finally, as detailed above, the probative value of the other acts evidence is not substantially outweighed by its prejudicial effect under Rule 403. Evidence of other crimes is admissible when offered for a proper purpose through various types of evidence, including witness testimony, so long as the evidence "'[does] not involve conduct any more sensational or disturbing than the crimes with which [the defendant has been] charged.'" Pitre, 960 F.2d at 1120 (quoting Roldan-Zapata, 916 F.2d at 804). Where the uncharged crimes are similar in nature to the charged crimes, Rule 404(b) evidence is admissible under the Rule 403 balancing test. See United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (upholding admissibility of evidence that the defendant, a police officer charged with engaging in excessive use of force with an arrestee, choked another arrestee on the basis that "the evidence did not involve conduct more inflammatory than the charged crime, and the district court gave a careful limiting instruction"); United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006) (prior cocaine convictions admissible as proof that the defendant was aware that substance in his closet was cocaine; observing that evidence admissible pursuant to Rule 404(b) should not be excluded on grounds of unfair prejudice where the evidence does not "involve conduct more inflammatory than the charged crime[s]"). Here, the evidence relating to the other criminal acts listed above will come from, inter alia, the testimony of witnesses and from documentary evidence, including communications between the defendant and victim witnesses, as well as photographs the defendant took of certain of his victims. Accordingly, the quality of the evidence is no more prejudicial than that offered with regard to the other charged crimes. Further, the uncharged criminal acts are either similar in nature or less sensational than the charged crimes.

Nor does the fact that, with respect to Jane Doe #4, the jury convicted the defendant of false imprisonment and lesser-included counts of battery, as opposed to the charged

21

aggravated and sexual battery, change the Rule 403 analysis because each of the offenses were based on a sole incident: the defendant's rape of Jane Doe #4.  Cf. United States v. Rodriguez, No. 04-CR-00055, ECF No. 424 (D. N.D.) (holding that "a past offense of sexual assault can be excluded when the past offense cannot be shown with reasonable certainty because its probative value is reduced" and determining that where a trial of a prior sexual assault ended in a full acquittal, use of that acquitted incident under Rule 413 was unfairly prejudicial (internal quotation marks omitted)).  Unlike where a defendant has been acquitted by a jury of any charges pertaining to a single incident, in the case of Jane Doe #4, the jury convicted the defendant of charges pertaining to her assault, which were based, among other things, on Jane Doe #4's testimony.

In any event, any potential prejudice to the defendant can be effectively mitigated by a cautionary instruction limiting the jury's consideration of the evidence to the purposes for which it is offered.  See, e.g., Mickens, 926 F.2d at 1328-29; United States v. Snype, 441 F.3d 119, 129 (2d Cir. 2006) (the law presumes that juries follow limiting instructions).

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court

grant the government's motion in its entirety.


Dated:  Brooklyn, New York
        February 20, 2026

                                    Respectfully submitted,

                                    JOSEPH NOCELLA, JR.
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York

                    By:     /s/
                                    Kayla Bensing
                                    Rachel A. Bennek
                                    Assistant United States Attorneys
                                    (718) 254-7000