

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

KCB/RAB
F. #2022R00013

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 24, 2026

<u>By ECF</u>

The Honorable Ramon E. Reyes, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States v. John Merrone
>        <u>Criminal Docket No. 25-171 (RER)</u>

Dear Judge Reyes:

The government respectfully writes to supplement its motion seeking to introduce testimony of uncharged sexual assaults by the defendant John Merrone. <u>See</u> ECF Nos. 24, 25, 27;[1] Fed. R. Evid. 413 (allowing court to admit evidence of uncharged sexual assaults where the government provides notice at least 15 days in advance of trial); Fed. R. Evid. 404(b) (permitting evidence of other crimes, wrongs or acts for specified permitted purposes, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident). Specifically, on February 20, 2026, the government moved to introduce testimony of Jane Doe #3, Jane Doe #4 and Jane Doe #5 pertaining to the defendant's sexual assaults of those women in 1999, 2011 and 2021. <u>See</u> ECF No. 24.

Since that filing, the government has interviewed a former girlfriend of the defendant, Jane Doe #6, who also provided information to Florida state investigators and prosecutors in or around 2011 in connection with the defendant's 2011 trial after he sexually assaulted Jane Doe #4. Jane Doe #6 has advised that she began dating the defendant in or around 2006, when the defendant was working in the cargo ship industry, and dated him until approximately 2010. Throughout the course of their relationship, the defendant grew increasingly sexually demanding with her, particularly when he was drinking alcohol. On several occasions, Jane Doe #6 awoke from sleep to find the defendant having sex with her; she pretended to remain asleep and the defendant continued having sex with her.

---

[1]      In its initial motion, the government advised that it had that week identified another victim whom the defendant sexually assaulted and would investigate and supplement the initial motion as needed. ECF No. 24 at 1 n.1.

Jane Doe #6's testimony will also provide evidence that, on at least two occasions, the defendant attempted to drug her by crushing a substance and putting it, on one occasion, in her food, and on another occasion, in her coffee. On at least one occasion she observed the defendant crush a pill in their bathroom and observed what she believed to be crushed pill powder.

On at least two occasions, the defendant sexually assaulted Jane Doe #6 after he had been drinking. The first occurred in or around August 2008, in which the defendant had been drinking alcohol and, after Jane Doe #6 initially refused to have sex with him, the defendant hit her in the stomach and then had sex with her. Following that incident, the two went to counseling together. The second incident occurred in or around October 2010, after the defendant had moved to Key West, Florida (where he sexually assaulted Jane Doe #4). Specifically, the defendant had returned home from drinking at the same bar where he later met Jane Doe #4, to the same apartment where he later raped Jane Doe #4. When he returned home that night, Jane Doe #6 was asleep on the couch; she awoke to the defendant attempting to have sex with her. She told him she did not want to have sex, but he continued to get on top of her, put his forearm across her neck and raped her. The following morning, Jane Doe #6 informed the defendant that he had raped her and that they were done, to which he responded that it was just a "game." Jane Doe #6 informed him that they did not play games like that, and the incident resulted in the end of their relationship.

For the reasons set forth in the government's filings seeking to introduce testimony regarding the sexual assaults of Jane Does #3, #4 and #5, the Court should also permit the government to introduce the defendant's prior sexual assault of Jane Doe #6. As with the charged sexual assault, the assaults of Jane Doe #6 occurred after the defendant had been drinking. Though Jane Doe #6 had not herself been incapacitated by drugs or alcohol, yet another instance of alcohol-fueled assault is nonetheless patently probative under Rule 413. Moreover, the defendant engaging in sex acts with Jane Doe #6 while she was sleeping or pretending to remain asleep demonstrates the defendant's unique proclivity for engaging in sexual activity with women who are either incapacitated or unconscious in some manner (whether through substances or sleep). Further, this evidence is not unfairly prejudicial—particularly in light of Rule 413's "thumb on the scale in favor of admissibility"—where the defendant's rape of Jane Doe #1, a much younger woman who was the defendant's subordinate and trapped on a ship with him, after completely incapacitating her is at least equally, if not more, disturbing than his sexual assaults of Jane Doe #6.

Further, the entirety of Jane Doe #6's anticipated testimony as outlined herein should be admitted pursuant to Rule 404(b). As set forth in the government's prior briefing, the government anticipates that the defense at trial will be that the defendant lacked criminal intent, or was simply mistaken in thinking that he had consent or that there was some sort of drunken misunderstanding, when he sexually assaulted Jane Doe #1. First, the defendant's repeated pattern of sexually assaulting women, including Jane Doe #6, demonstrates his modus operandi, intent, knowledge, absence of mistake and lack of accident—as does Jane Doe #6's informing the defendant, in clear terms, that she did not consent and that his unwanted sexual activity was not a "game." Second, Jane Doe #6's anticipated testimony regarding the defendant's attempts to drug her, which the government anticipates she will say she believed stemmed from her increasing refusal to meet his sexual appetite, is critical evidence of the defendant's knowledge

2

of and access to drugs, and is thus relevant to the defendant's motive, opportunity, preparation, plan and knowledge.[2]

For the reasons set forth herein and in the government's prior filings, the government respectfully submits that the Court should grant the government's motion in its entirety.

Very truly yours,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/ _____

Kayla Bensing
Rachel A. Bennek
Assistant U.S. Attorneys
(718) 254-6279/6140

---

[2]    Should the Court decline to permit Jane Doe #6 to testify about the instances in which the defendant raped her—though the Court should permit such testimony pursuant to both Rules 413 and 404(b)—the government nonetheless respectfully submits that she should be permitted to testify regarding the defendant's attempts to drug her, including her observations of the defendant crushing pill powder.  Such testimony is patently relevant and not unfairly prejudicial under the circumstances of this case.

3