**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

KCB/RAB
F. #2022R00013

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 22, 2026

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Ramon E. Reyes, Jr.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Merrone
>  Criminal Docket No. 25-171 (RER)

Dear Judge Reyes:

The government respectfully moves to preclude the proposed testimony of the defendant John Merrone's noticed defense expert witness Jimmie L. Valentine, Ph.D, who would offer expert testimony regarding substances used in drug facilitated sexual assaults. The defendant's disclosure relating to Dr. Valentine is attached hereto as Exhibit A (the "Report").

Because the defendant's expert disclosure regarding Dr. Valentine's testimony is woefully inadequate, failing to meet the disclosure obligations and standards set out in Federal Rule of Criminal Procedure 16 and in Federal Rules of Evidence 402, 403, and 702, the Court should preclude the proposed testimony of Dr. Valentine absent a prompt supplemental disclosure that complies with the Federal Rules of Evidence and Criminal Procedure.

On Thursday, June 18, the government received the defendant's expert disclosure for Beth Bryant, who is described as a forensic nurse examiner. The defendant's disclosure relating to Ms. Bryant is attached hereto as Exhibit B (the "Bryant Report"). Because the Bryant Report discusses ███████████████████████████████████████████ ████████████████████████████████ respectfully requests that the Bryant Report be filed under seal and portions of this motion addressing ████████████████████████████ be redacted from the public filing. In light of the timing of the production of the Bryant Report, the government is in the process of reviewing the materials provided and will make any further motions if needed. The government's initial objections regarding the Bryant Report are set forth below.

I. <u>Applicable Law</u>

    a. <u>*Daubert*</u> and Rule 16

In <u>Daubert</u> and its progeny, the Supreme Court focused on a district court's gatekeeping obligation when considering the admissibility of expert testimony based on specialized knowledge under Rule 702 of the Federal Rules of Evidence. <u>See</u> <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589, 592-93, 595, 597 (1993); <u>see also</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141-42, 147 (1999). The Supreme Court has explained that a district court, in executing its gatekeeping function, must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." <u>Daubert</u>, 509 U.S. at 597. The proponent of the expert's testimony bears the burden of establishing its admissibility by a preponderance of the evidence. <u>Daubert</u>, 509 U.S. at 592 n.10.

As the Second Circuit has stated, "[t]he district court cannot perform [the] complex evaluation of an expert's proposed methodology without a clear articulation of what the expert's opinions are and, even more importantly, of the bases for those opinions." <u>United States v. Ulbricht</u>, 858 F.3d 71, 116 (2d Cir. 2017), overruled on other grounds by <u>Carpenter v. United States</u>, 138 S. Ct. 2206, 585 U.S. 296 (2018). Thus, for a court to evaluate an expert's methodology, the proponent of the expert's testimony must comply with Federal Rule of Criminal Procedure 16(b)(1)(C)(iii), which requires defendants to disclose, for each expert witness, (1) "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief"; (2) "the bases and reasons for them"; (3) "the witness's qualifications, including a list of all publications authored in the previous 10 years"; and (4) "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Such disclosures must be made "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii). The purpose of the rule is to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." <u>United States v. Wilson</u>, 493 F. Supp. 2d 484, 486-87 (E.D.N.Y. 2006) (quoting Fed. R. Crim. P. 16, Advisory Committee Notes, 1993 Amendment); <u>see also</u> <u>United States v. Ulbricht ("Ulbricht II")</u>, No. 14-CR-68 (KBF), 2015 WL 413318, at *5 (S.D.N.Y. Feb. 1, 2015), <u>aff'd</u> 858 F.3d 71 (2d Cir. 2017).

It is well established that "[w]here a defendant fails to comply with such disclosure requirements, a court may prohibit the party from introducing the evidence at trial." <u>United States v. Dzionara-Norsen</u>, No. 21-CR-454, 2024 WL 191803, at *3-4 (2d Cir. Jan. 18, 2024) (summary order) (affirming preclusion of defense expert where notice provided "a brief summary of the proposed testimony, but failed to provide a full statement of [the expert's] opinions and reasons for them"); <u>United States v. Vaccarelli</u>, No. 20-3768-CR, 2021 WL 4805218, at *1 (2d Cir. Oct. 15, 2021) (affirming preclusion of defense expert where notice "failed to specify the basis for his opinion"); <u>Ulbricht</u>, 858 F.3d at 115 (affirming preclusion of defense experts where disclosures "were plainly inadequate" in that they "merely listed general and in some cases extremely broad topics on which the experts might opine" and did not "describe the bases for the experts' opinions"). A court may preclude the testimony as a whole, or any part that it determines was not properly disclosed to the government. <u>See</u> <u>United States v.</u>

Mahaffy, No. 05-CR-613 (ILG), 2007 WL 1213738, at *2-3 (E.D.N.Y. Apr. 24, 2007). Moreover, even if the disclosure provides a sufficient summary of any opinions to be offered by the witness, the testimony may be excluded if the defendant "has made no attempt at all to describe 'the bases and reasons for those opinions' as required by [Rule 16(b)(1)(C)]." Wilson, 493 F. Supp. 2d at 487. "'[P]roviding the government with a list of sources from which the experts drew their opinions' but 'not specify[ing] which sources the expert used to reach the different opinions identified' is insufficient." United States v. Ahmed, No. 12-CR-661 (SLT), 2015 WL 1611947, at *1 (E.D.N.Y. Apr. 9, 2015) (quoting United States v. Ferguson, No. 06-CR-137 (CFD), 2007 WL 4539646, at *2 (D. Conn. Dec. 14, 2007)).

      b.  Admissibility Under Rules 702, 402, and 403

With respect to the admission of expert testimony, Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Supreme Court has explained that Rule 702 "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility." Daubert, 509 U.S. at 592. Expert opinions are inadmissible if based on speculative assumptions. See id. at 589-590 ("knowledge" within the meaning of Rule 702 means more than "subjective belief or unsupported speculation"); see also Kumho Tire, 526 U.S. at 157 (the court is not required to admit "opinion evidence that is connected to existing data only by the ipse dixit of the expert" (citation omitted)).

In addition, under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible." Thus, a district court may preclude a proposed expert's testimony if the testimony is not relevant to the issues at trial. See, e.g., United States v. Stewart, 433 F.3d 273, 311-12 & n.10 (2d Cir. 2006) (affirming preclusion of expert testimony; "expert testimony regarding an issue not relevant to the charges under consideration has the potential to confuse the jury"); United States v. Brooks, No. 08-CR-35 (PKL), 2008 WL 2332371, at *2 (S.D.N.Y. June 4, 2008) (precluding expert testimony as "irrelevant to this trial," noting "substantial risk that such testimony would confuse the jury").

Even if the proposed testimony has some relevance, a district court may preclude testimony if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." See Fed. R. Evid. 403; see also United States v.

Dupre, 462 F.3d 131, 138 (2d Cir. 2006) (district court properly precluded expert testimony under Rule 403).

Among other things, the Court "must consider whether an expert's proposed testimony would usurp the province of the judge to instruct on the law, or of the jury to make factual determinations." Island Intell. Prop. LLC v. Deutsche Bank AG, No. 09-CV2675 (KBF), 2012 WL 526722, at *2 (S.D.N.Y. Feb. 14, 2012). While Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue," the Second Circuit has admonished courts to take care "lest . . . [the expert] be allowed to usurp the function of the judge." Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 512 (2d Cir. 1977). Accordingly, courts must not admit "opinions which would merely tell the jury what result to reach." Hygh v. Jacobs, 961 F.2d 359, 363-64 (2d Cir. 1992); see also United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." (emphasis in original)). Nor may an expert opine as to a party's state of mind, credibility, intent, or motive. See LaSalle Bank Nat'l Ass'n v. CIBC Inc., No. 08-CV-8426 (WHP) (HBP), 2012 WL 466785, at *5, 7 (S.D.N.Y. Feb. 14, 2012) (collecting cases) ("Although Rule 704(a) of the Federal Rules of Evidence provides that '[a]n opinion is not objectionable just because it embraces an ultimate issue of fact,' this does not mean that an expert is free to give testimony that effectively tells the fact finder what conclusion to reach.").

II.     The Court Should Preclude the Proposed Testimony of Dr. Valentine

Dr. Valentine's four-page Report falls far short of the expert disclosure requirements set out under the Federal Rules of Criminal Procedure and the Federal Rules of Evidence.

First, the Report fails to provide "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in chief" as required under Federal Rule of Criminal Procedure 16(b)(1)(C)(iii). The Report sets out categories that Dr. Valentine is expected to testify to but does not articulate his actual anticipated testimony or opinions with respect to the majority of the categories. See Dzionara-Norsen, 2024 WL 191803, at *3-4 ("a brief summary of the proposed testimony" was inadequate); Ulbricht, 858 F.3d at 115 ("disclosures [that] merely listed general and in some cases extremely broad topics on which the experts might opine" were inadequate); Ahmed, 2015 WL 1611947, at *1 ("Merely identifying the general topics about which the expert will testify is insufficient; rather the summary must reveal the expert's actual opinions" (internal quotation marks and citation omitted)). For example, the Report indicates that Dr. Valentine "will testify regarding the anticipated effects of hard alcohol on a woman in her early twenties"—but then provides no explanation as to what those effects are, how he will reach an analysis of "estimated blood alcohol concentration (BAC) at varying levels of consumption," or any explanation of "the residual symptoms that may be present the following morning and their potential overlap with the after-effects of DFSA substances." Report at 3. Indeed, his Report is replete with topics he will address without providing any substance as to what he will say about those topics.

Second, and even more egregiously, where the Report does set forth an opinion, it provides virtually no information about the "the bases and reasons for" that opinion. Fed. R.

Crim. P. 16(b)(1)(C)(iii).  The Report simply states generally that Dr. Valentine's opinions are "grounded in" his training and prior testimony and cites to a few general publications on pharmacology, toxicology, and alcohol absorption, without tying these resources to any particular opinion or conclusion in the Report.  Report at 4; see Ahmed, 2015 WL 1611947, at *1 (finding that providing a list of sources without specifying which sources the expert used to reach the different opinions is insufficient).  Nor does the Report explain any methodology used to reach these conclusions or opinions.  These failures to adequately disclose opinions and the bases and reasons for them as required by Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) also result in the defendant's failure to meet his obligations under Federal Rule of Evidence 702.

Indeed, pursuant to Federal Rule of Evidence 702, the defendant must demonstrate to the Court by a preponderance that, among other things, the expert's anticipated testimony is based on sufficient facts or data, is a product of reliable principles and methods, and reflects a reliable application of the principles and methods to the facts of this case.  Fed. R. Evid. 702.  "The Supreme Court . . . requires that if expert testimony is proffered, a trial court must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.  This requires that a trial court make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid and can be applied to the facts in issue.  When an expert witness fails to identify the objective bases for his opinion, the district court cannot perform a proper assessment; a proffered opinion deficient in this manner fails to meet the basic requirements of the Federal Rules of Evidence."  See Ulbricht II, 2015 WL 413318, at *7 (internal citations, quotation marks, and alterations omitted).  The defendant has failed to meet these obligations here because the Court (and the government) has inadequate information to even begin such an analysis.  Ulbricht, 858 F.3d at 116 ("The district court cannot perform [the] complex evaluation of an expert's proposed methodology without a clear articulation of what the expert's opinions are and, even more importantly, of the bases for those opinions.").

For example, under the paragraph titled "Opinions Regarding the Alleged Conduct of the Complaining Witnesses," Dr. Valentine draws the bold conclusion that "the absence of confirmatory forensic evidence, considered alongside the clinical features present in the record, does not support an inference that any controlled substance was administered and that the government cannot exclude voluntary alcohol intoxication as the sole cause of the complainants' alleged impairment."  Report at 4.  This conclusion is purportedly "draw[n] [from] his review of the available record."  Report at 3.  However, nowhere does the Report state what constitutes the "available record," nor does the Report explain why the "record" "does not support an inference that any controlled substance was administered."  Report at 3-4; see Ulbricht, 858 F.3d at 115 (upholding preclusion of expert testimony because expert's assertion that "the government's claim that over 700,000 Bitcoins were transferred to [the defendant's] Bitcoin wallet 'is implausible,' and the expert would dispute this finding" was "not a summary of [the anticipated expert's] opinion, nor [did] it identify the basis for that opinion"); Dzionara-Norsen, 2024 WL 191803, at *4 (upholding preclusion of expert testimony where expert disclosure "failed to provide a full statement of [the expert's] opinions and reasons for them").  Further, in a case where the government expects to present evidence of the drugging and, in some instances, the subsequent sexual assault, of multiple victims on multiple occasions, it is not

5

even clear which victims Dr. Valentine's anticipated testimony relates to.[1] In short, the disclosure makes no attempt to identify any source for this broad sweeping conclusion, much less articulate a methodology or rationale used to reach such conclusion. Wilson, 493 F. Supp. 2d at 487 ("[I]t is clear that [the defendant] has made no attempt at all to describe 'the bases and reasons for those opinions' as required by [Rule] 16(b)(1)(C). For that reason alone, testimony by [the expert] cannot be admitted."). Nor does the defendant's disclosure demonstrate the methodology used by or the reliability of Dr. Valentine's testimony on this issue. See Ulbricht II, 2015 WL 413318, at *3 (precluding expert testimony in part because "what analysis [the expert] performed and the methodology are unknown"); see also Fed. R. Evid. 702.

Even assuming Dr. Valentine will rely generally on his clinical experience, he provides no explanation of how such experience supports his conclusion concerning the administering of any controlled substance, to whom his conclusion applies, or what fact-specific information he considered in drawing such conclusion. These failures are fatal. And, while the determination of admissibility of expert testimony does not look to the expert's conclusion, the defendant's failure to provide an adequate disclosure is exacerbated by the fact that Dr. Valentine's conclusion appears counter to any lay person's basic understanding of alcohol consumption—that individuals who have experience drinking do not typically black out after consuming a single alcoholic beverage.[2] Accordingly, Dr. Valentine's conclusion, which seems to suggest the opposite, is particularly baffling absent any explanation of what he reviewed and considered and what analysis he conducted to reach that opinion. United States v. Smith, 806 F. Supp. 3d 382, 394 (S.D.N.Y. 2025) ("At a minimum, 'the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand.'" (quoting Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002))); see also Ahmed, 2015 WL 1611947, at *2 (finding expert disclosure inadequate where the disclosure did not, among other things, "indicate why these experts" reached their conclusions).

---

[1] The Report refers to the "two complaining witnesses identified in the instant indictment." Report at 3. The government assumes this refers to Jane Doe #1 and Jane Doe #2, though the Report leaves the government guessing as only Jane Doe #1 is identified in the indictment.

[2] Dr. Valentine also opines that "the effects experienced by, and the conduct and demeanor attributed to, the two complaining witnesses identified in the instant indictment are more consistent with the effects of voluntary alcohol intoxication than with the administration of any exogenous controlled substance or DFSA agent." Report at 3. This conclusion seems inherently inconsistent with his statement in the Report that "the combination of alcohol with substances from these classes can produce an additive effect" and "[w]ithout toxicology testing identifying one of these drugs, the clinical presentation cannot be distinguished from acute alcohol intoxication." Report at 3. Because the Report fails to provide any information explaining the bases for Dr. Valentine's opinions or his methodology in reaching his conclusions, it is impossible to understand how these two opposing conclusions can be reconciled.

Relatedly, the Report provides limited or no information that would allow the Court and government to determine whether "the testimony is the product of reliable principles and methods." Fed. R. Evid. 702. For example, under the paragraph titled, "Alcohol Potentiation," the Report asserts that Dr. Valentine "will offer a framework for evaluating observable impairment in the absence of confirmatory laboratory results." Report at 3. But nowhere in the Report does he explain what that framework is. See Ulbricht II, 2015 WL 413318, at *6 ("[M]erely asserting that [the expert] will provide this opinion based on some unspecified method of analyzing market forces and liquidity, based on data from unspecified sources, does not suffice."). The government and the Court are left guessing at what "framework" will be presented at trial and the bases of that framework. See id., at *8 ("[T]he Court cannot make the required relevance analysis because it has no idea as to what [the expert's] opinions are. It is not for this Court to engage in speculation . . . .").

Similarly, under the paragraph titled, "Effects of Hard Alcohol on a Young Woman – Pharmacokinetic Modeling," the Report asserts that Dr. Valentine "will testify regarding the anticipated effects of hard alcohol on a woman in her early twenties, approximately 5'8" and 165 pounds, using standard pharmacokinetic modeling." Report at 3. However, the Report provides no information about what "standard pharmacokinetic modeling" is or the "anticipated effects" he is expected to testify to. The Report is rife with these failures, and the shortcomings articulated above are only a few examples of the inadequacies of the disclosure.

Third, regardless of the numerous disclosure deficiencies, the Court in any event should preclude Dr. Valentine from drawing the conclusion that the victim testimony and other evidence in this case "does not support an inference that any controlled substance was administered, and that the government cannot exclude voluntary alcohol intoxication as the sole cause of the complainants' alleged impairment." Report at 4. Dr. Valentine's conclusion—based on, apparently, a review of trial evidence or 18 U.S.C. § 3500 material in this case—would both substitute "expert opinion for factual evidence," United States v. Mejia, 545 F.3d 179, 190 (2d Cir. 2008), and "usurp[ ] the jury's function" by "providing an overall conclusion of criminal conduct," United States v. Zhong, 26 F.4th 536, 556 (2d Cir. 2022) (reversing and remanding conviction when the government's expert witness testified that an employment contract in a forced labor prosecution was "troubling" and raised "major red flags" because the expert came "dangerously close to usurping the jury's function" by "providing an overall conclusion of criminal conduct"); United States v. Alexander, 24-CR-676 (VEC), 2025 WL 3564329, at *8 (S.D.N.Y. Dec. 12, 2025) (precluding portion of defense expert testimony on the development of false memories and finding that the expert could "testify generally about what and how certain factors can lead to memory distortion, but not whether those factors were present here, nor to whether certain victims were subject to them" as such "speculation would constitute an impermissible credibility assessment" (emphasis in original)); see also Fed. R. Evid. 704(b). Allowing an individual deemed an expert by the Court to opine that the victims were not drugged or that the defendant did not intend to drug them in a prosecution alleging drug-facilitated sexual assault would be tantamount to permitting an expert to offer a conclusion as to the defendant's guilt or innocence and would improperly invite the jury to substitute the expert's judgment for their own. This proposed opinion is a thinly veiled credibility assessment of the victim witnesses who are at the heart of this case. It is well-settled that "expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702." Nimely v. City of New York,

414 F.3d 381, 398 (2d Cir. 2005); <u>see also</u> <u>Alexander</u>, 2025 WL 3564329, at *5 (finding the government's expert's testimony admissible because the expert would not "opine on the credibility of witnesses or otherwise infringe on the jury's factfinding role because [the expert] will not opine about <u>any specific witness</u>"). Accordingly, the Court should preclude Dr. Valentine from opining in any way about the victims or the defendant. <u>See</u> <u>Nimely</u>, 414 F.3d at 398 (precluding testimony where the expert's "statements essentially instructed the jury as to an ultimate determination that was exclusively within its province, namely the credibility of [witnesses]" because "[s]uch testimony does not 'assist the trier of fact,' Fed. R. Evid. 702, but rather 'undertakes to tell the jury what result to reach'").

 <u>Finally</u>, the bare bones disclosure does not provide sufficient information to allow the Court to (i) determine whether Dr. Valentine's testimony would be relevant or (ii) conduct a balancing test under Federal Rule of Evidence 403. To the extent the defendant seeks to introduce Dr. Valentine's testimony to generally discuss the pharmacological mechanisms by which drugs and alcohol can be used to incapacitate an individual for purposes of sexual assault, and the observable effects of certain drugs associated with drug facilitated sexual assaults, (Report at 1-2), such testimony appears duplicative of the testimony expected to be provided by the government's expert witness, Dr. Marc LeBeau. <u>Mahaffy</u>, 2007 WL 1213738, at *3 (finding that expert testimony that is "entirely cumulative" of other evidence "would not only be unhelpful to the trier of fact, but would be a waste of time and a needless presentation of cumulative evidence" (internal citations, quotation marks, and alterations omitted)). Whether Dr. Valentine's analysis and opinions on this general topic differ from Dr. LeBeau's such that it would not be cumulative is unclear due to the inadequacies of the defendant's disclosure.

III. <u>Testimony of Beth Bryant</u>

 The defendant seeks to present expert testimony through Ms. Bryant regarding

Bryant Report at 2.

 As noted above, due to the timing of this disclosure, the government is still in the process of evaluating the proposed testimony. However, as an initial matter, the government

. See ECF No. 32 ("Gov't MIL") at 53-54.

██████████████████████████████████████████

Mahaffy, 2007 WL 1213738, at *3 (finding that expert testimony that is "entirely cumulative" of other evidence "would not only be unhelpful to the trier of fact, but would be a waste of time and a needless presentation of cumulative evidence" (internal citations, quotation marks, and alterations omitted)). Further, the extent of any such testimony by Ms. Bryant loses much of its relevance should the Court grant the government's motion in limine ████ ████████████████████████████████████████.

IV.     Conclusion

For the foregoing reasons, the Court should preclude Dr. Valentine's testimony absent a prompt supplemental disclosure that complies with the Federal Rules of Evidence and Criminal Procedure, and should preclude his testimony entirely about the victims or defendant in this case. See Smith, 806 F. Supp. 3d at 393 (precluding testimony that failed to satisfy the Rule 16(b)(1)(C) disclosure requirements "because [the disclosure was] inconsistent and unclear as to the scope of [the expert's] testimony, [did] not clearly state her proposed opinions, and fail[ed] to articulate the bases and reasons for many opinions it [did] state"); Ulbricht II, 2015 WL 413318, at *5 ("[F]ailure to provide the required level of detail as to the expert's opinions and the bases, reasons, and sources of those opinions can also lead to preclusion."). Further the Court should preclude Ms. Bryant's testimony to the extent it relates to ██████████████████ ████████████████████████████████.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     ___/s/_____
        Kayla Bensing
        Rachel A. Bennek
        Assistant U.S. Attorneys
        (718) 254-6279/6140

9